IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN SOROKO | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-6120 |
| ATMOS, INC., ET AL. | : | |

## MEMORANDUM

**SURRICK, J.**                                                                                       **SEPTEMBER  23 , 2015**

Presently before the Court is Defendant ATMOS, Inc.'s Motion to Dismiss, or in the

Alternative, Motion for Summary Judgment as to the Amended Complaint.  (ECF No. 7.)  For

the following reasons, the Motion is granted in part and denied in part.

## I.       BACKGROUND

This is an employment action brought under the Age Discrimination in Employment Act,

29 U.S.C. § 621 *et seq*.  (Am. Compl. Count I, ECF No. 4.)  Plaintiff also brings claims arising

under Pennsylvania state law, for breach of contract and for a violation of the Pennsylvania

Human Relations Act, 43 Pa. Stat. § 951 *et seq*.  (*Id*. at Counts II & III.)  Defendant ATMOS

moves to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), or for

summary judgment pursuant to Federal Rule of Civil Procedure 56.  In the alternative, ATMOS

moves to compel Plaintiff to submit his claims to arbitration under an express arbitration

agreement.[1]

---

[1] Defendant ATMOS, Inc. initially styled the instant Motion as one seeking dismissal or alternatively summary judgment.  (Def.'s Mot.)  In a supplemental Memorandum of law, however, ATMOS refers to the Motion as a "Motion to Stay the Proceeding Pending Arbitration on All Counts of the Amended Complaint."  (Def.'s Supp. Mem. 1, ECF No. 12.)

## A.      Factual Background

On January 2, 2007, Plaintiff, a resident of Allentown, Pennsylvania, was hired as Director of Sales and Marketing by ATMOS, Inc., a Pennsylvania corporation which sells medical supplies.  (Am. Compl. ¶¶ 1, 4.)  Plaintiff was later promoted to be Vice President of Sales and Marketing.  (*Id*. at ¶ 6.)  Plaintiff's responsibilities included directing ATMOS' Ear, Nose and Throat Division, overseeing ATMOS' sales representatives, and working in ATMOS' Care Division.  (*Id*. at ¶¶ 7-8.)  Plaintiff was employed pursuant to an agreement, which was executed on December 3, 2006 (the "2006 Agreement").  (*Id*. at ¶ 50; 2006 Agreement, Am. Compl. Ex. 2.)  The 2006 Agreement contained an arbitration clause covering "any controversy or any dispute" arising out of the Agreement.  (2006 Agreement § 8.)  Plaintiff later executed a second agreement with ATMOS, on December 2, 2010, titled "Confidentiality, Invention Disclosure and Non-Compete Agreement" (the "2010 Agreement").  (2010 Agreement, Def.'s Mot. Ex. D; Def.'s Am. Document, ECF No. 13; Pl.'s Supp. Mem. 1, ECF No. 16.)  Similar to the 2006 Agreement, the 2010 Agreement contained a provision for arbitration, which covered "any dispute or controversy arising out of [Plaintiff's] employment or [the] Agreement."  (2010 Agreement § 4.)

In June 2010, ATMOS hired a new president, Ingo Riedl.  (Am. Compl. ¶ 10.)  Plaintiff worked with Riedl, teaching him the intricacies of ATMOS' business.  (*Id*. at ¶¶ 11-13.)  Soon afterwards, however, ATMOS' sales slowed due to changing market conditions.  (*Id*. at ¶ 14.)  On December 11, 2010, Riedl informed Plaintiff that he was being replaced because of poor sales, but offered Plaintiff a position in California focusing on sales in the Western United States.  (*Id*. at ¶¶ 17-19; Def.'s Mot. 3.)  The position in California, according to Riedl, would require

Plaintiff to accept a reduced salary.  (Am. Compl. ¶ 20.)  At this time, Plaintiff was the second-highest-paid employee at ATMOS.  (*Id*. at ¶ 38.)

Plaintiff accepted Riedl's proposition, traveled to California, and signed a year-long lease for an apartment there.  (Am. Compl. ¶¶ 21-23.)  Riedl then informed Plaintiff that ATMOS would terminate him instead of offering him a transfer to California, and stated that Plaintiff would be responsible for all moving-related expenses he had incurred.  (*Id*. at ¶¶ 25-26.)  ATMOS later hired a younger individual to replace Plaintiff, and Riedl noted that Plaintiff's replacement was well-connected among independent sales representatives nationwide.  (*Id*. at ¶ 28.)

Plaintiff claims that ATMOS never intended to employ him in California, but instead assumed that Plaintiff would not accept the proposed transfer.  (*Id*. at ¶¶ 29-30.)  Plaintiff believes that ATMOS fired him in order to free up salary to hire more employees, which ATMOS could accomplish by hiring a replacement who was younger and less experienced, and would consequently command a lesser salary.  (*Id*. at ¶¶ 34-36.)  Even though Plaintiff alleged that ATMOS retaliated against him, he has voluntarily withdrawn his retaliation claim.  (*Id*. at ¶ 37; Pl.'s Resp. 21, ECF No. 16.)

**B.   Procedural Background**

In April of 2011, Plaintiff filed a grievance with the Equal Employment Opportunity Commission ("EEOC").  He received a Notice of Right to Sue soon thereafter.  (Am. Compl. ¶¶ 39-40; Notice of Right to Sue, Am. Compl. Ex. 1.)  Plaintiff has not registered any grievances with the Pennsylvania Human Relations Commission ("PHRC").  On September 28, 2011, Plaintiff filed a Complaint in this Court against ATMOS and Defendant ATMOS

MedizinTechnik GMbH & Co. KG.[2]  (Compl., ECF No. 1.)  On November 8, 2011, ATMOS

filed a Motion to Dismiss.  (ECF No. 2.)  Plaintiff responded by filing an Amended Complaint

on November 28, 2011.

On December 29, 2011, ATMOS filed the instant Motion to Dismiss.  (ECF No. 7.)

Plaintiff responded on February 3, 2011.  (ECF No. 16.)[3]  In an Order dated February 10, 2012,

we requested additional briefing and documentation regarding the arbitration agreement.  (ECF

No. 11.)  ATMOS filed a Memorandum of Law in Support of its Motion on February 27, 2012.

(ECF No. 12.)  It also submitted a complete copy of the 2010 Agreement.  (ECF No. 13.)  On

March 6, 2012, Plaintiff filed a Supplemental Memorandum of Law on the Issue of Arbitration.

(Pl.'s Supp. Mem., ECF No. 14.)

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., "enables the enforcement of a

contract to arbitrate, but requires that a court shall be satisfied that the making of the agreement

for arbitration . . . is not in issue before it orders arbitration."  *Guidotti v. Legal Helpers Debt*

*Resolution, LLC*, 716 F.3d 764, 771 (3d Cir. 2013) (internal quotation marks and citation

omitted).  Before making that assessment, the court must first determine whether the motion

should be decided under Federal Rule of Civil Procedure 12 or 56.  *MacDonald v. Unisys Corp.*,

---

[2] Defendant ATMOS MedizinTechnik GMbH & Co. KG has not entered an appearance in this matter.  The docket reflects that Plaintiff has not effected service on this Defendant and has not sought to enter a default against this Defendant.  Although Plaintiff refers to this Defendant as the parent company of ATMOS, Inc., and further that ATMOS, Inc. is its "alter ego," (*see* Am. Compl. ¶ 3), Counsel for ATMOS indicates that she does not represent this Defendant and represents only ATMOS, Inc. (*see* Def.'s Mot. 2 n.1).  By separate Order, we are dismissing Defendant ATMOS MedizinTechnik GMbH & Co. KG based upon Plaintiff's failure to prosecute.

[3] Plaintiff's response (ECF No. 10) was mistakenly filed in two sections.  We granted Plaintiff leave (ECF No. 15) to re-file the same memorandum with consistent page numbers.

951 F. Supp. 2d 729, 732 (E.D. Pa. 2013).  The Third Circuit has addressed the circumstances where Rule 12 or 56 applies as follows:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.  But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.  After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti*, 716 F.3d at 776 (internal quotation marks and citations omitted).

ATMOS moves to compel arbitration under the 2006 and 2010 Agreements.  The 2006 and 2010 Agreements are clear and unambiguous.  Indeed, Plaintiff's opposition to ATMOS' Motion does not contain any additional facts which would tend to put the Agreements at issue.  We will therefore decide the ATMOS Motion under the Rule 12(b)(6) standard.  In doing so, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaint's claims are based upon these documents." *Id*. at 772.  Moreover, we accept as true the facts plead in the Complaint and construe them in the light most favorable to Plaintiff.  *Id*.

## III.   DISCUSSION

ATMOS seeks dismissal of Plaintiff's claims on the merits.  Alternatively, it seeks to compel Plaintiff to submit his claims to arbitration.  To the extent that arbitration is ordered, ATMOS requests a stay of this matter pending arbitration.  Plaintiff responds by challenging the validity of the arbitration agreement.  We have jurisdiction pursuant to 28 U.S.C. § 1331.

Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA reflects "strong federal policy in favor of the resolution of disputes through arbitration." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). The FAA "makes agreements to arbitrate enforceable to the same extent as other contracts." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). "[A] written provision in any [] contract . . .or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, shall be valid, irrevocable, and enforceable," unless there is a superseding legal basis for ignoring the provision. 9 U.S.C. § 2.

A motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) (internal quotation mark and citation omitted). Prior to ordering arbitration pursuant to the FAA, "a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Tech. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation mark and citation omitted).

### A.    The Validity of the Arbitration Agreements

ATMOS contends that the 2006 and 2010 Agreements are valid and enforceable contracts, and that the arbitration clause contained in these Agreements controls the disposition

of Plaintiff's employment-related claims.  Plaintiff responds by challenging the validity of the

arbitration clauses in the 2006 and 2010 Agreements.  Plaintiff argues that the 2006 Agreement

is "vague" and "uncertain" to pass muster under controlling law.  He also claims that the 2010

Agreement "is not even captioned as an arbitration agreement" and is merely generic boilerplate

language.  (Pl.'s Supp. Mem. 1.)  Finally, he argues that "there is no recital of the specific federal

laws against employment discrimination" in the 2010 Agreement (*id*.), and that the 2010

Agreement constitutes an unconscionable and thus unenforceable contract (*id*. at 2.)

Where a party challenges the validity of the arbitration agreement, "a threshold question

of arbitrability is presented for the court to decide."  *Nino v. Jewelry Exchange, Inc.*, 609 F.3d

191, 200 (3d Cir. 2010).  To determine whether the parties agreed to arbitrate, we examine

"ordinary state-law principles that govern the formation of contracts."  *First Options of Chic.,*

*Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also John Wiley & Sons, Inc. v. Livingston*, 376

U.S. 543 (1964) (arbitration is a matter of contract).   The 2006 and 2010 Agreements call for the

application of Pennsylvania law.[4]  Under Pennsylvania law, a valid, enforceable contract

requires "(1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to

be enforced, and (3) consideration."  *Kirleis*, 560 F.3d at 160 (citation omitted).

### 1.   *Manifestation of an Intention to be Bound*

For the arbitration clauses in the 2006 and 2010 Agreements to be valid, there must be a

manifestation of intent by Plaintiff and ATMOS to be bound by those clauses.  Both the 2006

Agreement and 2010 Agreement are between ATMOS and Plaintiff.  Both agreements are short

and concise.  The 2006 Agreement is five pages in length and contains nine sections.  The 2010

Agreement is six pages in length (the first of which is a cover page) and contains five sections.

---

[4] Both Plaintiff and ATMOS acknowledge that Pennsylvania law applies to the analysis
of the validity of the arbitration agreements.  (Pl.'s Resp. 16, 18-19; Def.'s Supp. Mem. 5.)

Both Agreements contain arbitration clauses that are contained in individual sections, titled

"Arbitration," and set apart by underlined (the 2006 Agreement) or bold (the 2010 Agreement)

text.  Following the arbitration clause, the 2006 Agreement contains language that it represents

"the entire agreement between [ATMOS] and [Plaintiff] with respect to [Plaintiff's] employment

with [ATMOS]."  (2006 Agreement § 9.)  It also provides:  "To evidence their agreement,

[ATMOS] and [Plaintiff] have executed and delivered this Agreement as of the first date that is

written above."  (*Id*. at 5.)  Plaintiff and the president of ATMOS affixed their signatures

immediately following this language in the Agreement.  Similarly, the 2010 Agreement provides

that it "sets forth the entire agreement and understanding between [ATMOS] and [Plaintiff]

relating to the subject matter [therein]."  (2010 Agreement § 5.h.)  The 2010 Agreement is

"binding upon [Plaintiff's] heirs, executors, administrators and other legal representatives."  (*Id*.

at § 5.i.)  As with the 2006 Agreement, Plaintiff and the president of ATMOS affixed their

signatures to the 2010 Agreement immediately following this language.

A plain reading of the 2006 and 2010 Agreements indicates that both Plaintiff and

Defendant intended to be bound by all the terms in the Agreements, including the arbitration

provision.  The Agreements are clear that they represent the employment relationship between

Plaintiff and ATMOS, and that they represent the entirety of the employment agreement between

these parties.  Furthermore, both parties signed the 2006 and 2010 Agreements, in order to define

the rights and responsibilities of the employment relationship.  There is nothing to indicate that

this was not done of their own free will.  Under Pennsylvania law, "[a] party's signature to a

contract is designed to evidence his intention to be bound thereby."  *Petrie v. Haddock*, 119 A.2d

45, 47 (Pa. 1956).  Based upon these circumstances, Plaintiff intended to be bound by the terms

of the 2006 and 2010 Agreements, which include the arbitration provisions.

Plaintiff does not claim that he was subjectively unaware of the terms of the contract. He instead attempts to argue that the Agreements are impermissibly vague. Plaintiff claims that the "arbitration language [in the 2010 Agreement] is not highlighted or set apart in any way, and does not contain any separate signature line." (Pl.'s Resp. 19-20.) He also claims that any arbitration clause "must be clear and unmistakable," because "[w]ithout knowing the terms of the contract, one cannot accept them." (*Id*. at 19.) And he argues that it is "indicated by the Third Circuit in *Kirleis*" that "merely accepting a general employment agreement is not sufficient to manifest an intent to be bound by the arbitration provisions set forth therein." (Pl.'s Resp. 18.)

Contrary to Plaintiff's arguments, the terms of the arbitration clauses are not vague. They are clear and unambiguous. The clauses are set apart as individual sections in the Agreements, with the term "arbitration," which text is highlighted, in the heading. There is no requirement in Pennsylvania that a contracting party affix his signature to each and every section of an agreement to manifest an intent to be bound by the terms. "Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood . . . *Ignorantia non excuasat*." *Simeone v. Simeone*, 581 A.2d 162, 165-66 (Pa. 1990).

In addition, Plaintiff's reliance upon *Kirleis* is misplaced. *Kirleis* concerned an arbitration agreement contained within a firm's bylaws. 560 F.3d at 159. Those bylaws were never provided to the employee, they were never read by the employee, and the bylaws were never signed by the employee. *Id*. at 161-62. Based upon these facts, the Third Circuit determined that the employee did not consent to the arbitration provision. *Id*. at 162. The court also held that there could be no implied agreement to arbitrate because "Pennsylvania law requires arbitration agreements to be explicit." *Id*. at 164. *Kirleis* is easily distinguished from

the instant case.  There was no explicit agreement to arbitrate in *Kirleis*; there is an explicit

agreement, signed by Plaintiff, here.

      Based upon the express terms of the 2006 and 2010 Agreements, which were signed by

Plaintiff, Plaintiff has manifested his intent to be bound by the arbitration provisions.

Accordingly, the first element in determining whether an enforceable agreement exists is met.

           *2.     Terms Sufficiently Definite to be Enforced*

      In order for the 2006 and 2010 arbitration clauses to be valid, Pennsylvania law requires

that the terms be sufficiently definite to be enforced.  ATMOS argues that the terms of the

arbitration clauses within the 2006 and 2010 Agreements are sufficiently definite to be enforced.

Plaintiff disagrees.  The 2006 Agreement provides:

> **8.  <u>Arbitration</u>**. Except as provided in Section 5(d) above, any controversy or
> dispute arising out of or relating in any way to this Agreement or the Employee's
> employment with the Employer, or any breach or alleged breach of this
> Agreement, shall be resolved by arbitration conducted in Allentown, PA.

(2006 Agreement § 8.)  Similarly, the 2010 Agreement provides:

> **4. Arbitration and Equitable Relief.**
>
> Except as set forth in the last two sentences of this paragraph, I agree that any
> dispute or controversy arising out of my employment or this Agreement, or
> relating to any interpretation, construction, performance or breach of this
> Agreement, shall be settled by an expedited arbitration to be held in Allentown,
> Pennsylvania, in accordance with the National Rules of the American Arbitration
> Association (then in effect) governing employment disputes, subject to the
> provisions of this Paragraph 4.

(2010 Agreement § 4.)

      The terms of these agreements are clear and unequivocal.  They provide, in

straightforward fashion, that any dispute concerning the employment relationship between

Plaintiff and ATMOS shall be settled by arbitration.  In Pennsylvania, "[a]n agreement is

sufficiently definite if the parties intended to make a contract and there is a reasonably certain

basis upon which a court can provide an appropriate remedy." *Peerless Publications, Inc. v. Cnty. of Montgomery*, 656 A.2d 547, 552 (Pa. Commw. Ct. 1995), *appeal denied*, 668 A.2d 1141 (Pa. 1995).  The parties here certainly intended to make a contract.  The 2006 and 2010 Agreements provided the basis for Plaintiff's employment with ATMOS.  There is also a certain basis for a court to provide a remedy under the arbitration provisions.  Under the FAA and the agreements, a court may order the parties to arbitration and the court may enter a judgment on an arbitration award.  Clearly, these terms are sufficiently definite to be enforced.

Plaintiff makes certain spurious arguments in an attempt to evade arbitration.  He contends that "the arbitration agreement in the employment contract does not, for example, even mention which party is responsible for fees or costs."  (Pl.'s Resp. 19; Pl.'s Supp. Mem. 1.)  The "mere absence of a provision governing costs in an arbitration agreement is not sufficient to make the agreement unenforceable."  *Hall v. Treasure Bay Virgin Islands Corp.*, 371 F. App'x 311, 313 (3d Cir. 2010).  While an arbitration agreement that requires procedures so expensive that it prevents a party "from effectively vindicating [his] federal statutory rights in the arbitral forum" is void as unconscionable, the burden lies on the plaintiff seeking to invalidate the agreement to allege a likelihood of incurring such costs.  *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000).  The Third Circuit has determined that, to meet this burden, "a plaintiff must (1) come forward with some evidence to show the projected fees that would apply to their specific arbitrations, and (2) show the party's inability to pay those costs."  *Hall*, 371 F. App'x at 313 (citing *Parilla v. IAP Worldwide Servs.*, 368 F.3d 269, 283-85 (3d Cir. 2004)).

Plaintiff has made no attempt to satisfy either of these requirements.  Although the 2006 and 2010 Agreements do not assign the financial burden of arbitration to either party, this does not render the arbitration provisions void.  It is incumbent upon Plaintiff to show that the fees

associated with the arbitration are unreasonable and that he is unable to pay. He has not done so here.

Because the terms of the arbitration clauses within the 2006 and 2010 Agreements are clear and straightforward, they are sufficiently definite to be enforced. Accordingly, the second element in determining whether an enforceable agreement exists is met.

>        3.        *Consideration*

Finally, for the 2006 and 2010 arbitration clauses to be valid, Pennsylvania law requires consideration. ATMOS argues that consideration existed for the 2006 and 2010 Agreements. Plaintiff does not specifically argue that no consideration was present for the arbitration clauses. But he nevertheless argues that the arbitration clauses are not valid agreements.

"Consideration 'confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise.'" *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) (citation omitted). An exchange of promises to arbitrate constitutes sufficient consideration. "When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." *Id*.

Plaintiff and Defendant exchanged promises to arbitrate any disputes arising out of their relationship. The language in the 2006 and 2010 Agreements specifically provides that both Plaintiff and ATMOS agreed to settle any "dispute" or any "controversy" arising out of the Agreement or the employment relationship. This very language mirrors the language present in the arbitration clause at issue in *Blair*. Analyzing this very same language, the Third Circuit held:

> The language of the agreement is clear that both parties agreed to be bound to the
> arbitration agreement and Blair having read that language when she signed the

> acknowledgment . . . containing the arbitration clause.  When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced.

*Id*. at 603.  Applying *Blair* to the instant case, and based upon the explicit language contained in the 2006 and 2010 Agreements signed by both Plaintiff and ATMOS, satisfactory consideration exists.

Since consideration exists, all three requirements under Pennsylvania law are met. Accordingly, the arbitration clauses in the 2006 and 2010 Agreements are clearly valid and enforceable.

### 4.    *Unconscionability*

Even though the arbitration clauses within the 2006 and 2010 Agreements are valid, Plaintiff argues that the Agreements are unconscionable.  However, Plaintiff provides no specifics to support this argument.  His submissions consist largely of rote recitation of legal standards.

To show unconscionability under Pennsylvania law, a party must demonstrate that a contract was both substantively and procedurally unconscionable.  *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007).  A contract or provision is substantively unconscionable where it "unreasonably favors the party asserting it."  *Id.*  An arbitration agreement cannot be construed as substantively unconscionable where it "does not alter or limit the rights and remedies available to [a] party in the arbitral forum . . . ."  *Edwards v. Hovensa, LLC*, 497 F.3d 355, 364 (3d Cir. 2007).  A contract is procedurally unconscionable where "there was a lack of meaningful choice in the acceptance of the challenged provision."  *Salley*, 925 A.2d at 119. Courts "should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the

revocation of any contract." *Gilmer*, 500 U.S. at 32-33.  However, "more than a disparity in

bargaining power is needed in order to show that an arbitration agreement was not entered into

willingly." *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 229 (3d Cir. 1997).

There is nothing in this record to suggest that the Agreements are unconscionable.

Plaintiff held an executive-level position with ATMOS.  (Am. Compl. ¶ 6.)  He was the "second

highest paid employee" at the company.  (*Id*. ¶ 38.)  Plaintiff is certainly sophisticated enough to

understand the implications of signing the 2006 and 2010 Agreements.  *Cf. Gilmer*, 500 U.S. at

33 (enforcing an arbitration agreement and noting that the record did not indicate that plaintiff,

an "experienced businessman," was "coerced or defrauded into agreeing to the arbitration

clause.").  Indeed, Plaintiff himself does not argue that he did not have any meaningful choice in

signing the Agreements.  He does not argue that he was so underwhelmed in bargaining power or

that the Agreements were the product of fraud.  And he does not argue that the Agreements

unreasonably benefit only ATMOS.  Plaintiff's conclusory arguments that the Agreements were

"unconscionable" does not make it so.  Plaintiff is required to show that the Agreements were

both substantively and procedurally unconscionable.  Plaintiff has failed to make such a

showing.  We reject his arguments of unconscionability.

**B.     The Scope of the Arbitration Agreements**

Addressing next the question of whether the terms of the contract are sufficiently definite

to be enforced, where a contract contains an arbitration clause, there is a presumption of

arbitrability.  *AT&T Tech.*, 475 U.S. at 650.  "Doubts should be resolved in favor of coverage,"

and the presumption is "particularly applicable where the clause is broad."  *Id*. (citation omitted).

"[I]f the allegations underlying the claims touch matters covered by an arbitration clause in a

contract, then those claims must be arbitrated."  *Brayman Const. Corp. v. Home Ins. Co.*, 319

14

F.3d 622, 626 (3d Cir. 2003) (internal quotation marks and citation omitted).  Courts that encounter arbitration clauses encompassing "any" claim, controversy, or dispute language routinely find that the dispute falls within the scope of the arbitration clause.  *Accord Gilmer, 500 U.S. at 23, 35; Steigerwalt v. Terminix Intern. Co., LP*, 246 F. App'x 798, 801 (3d Cir. 2007) (ordering arbitration because arbitration clause "quite simply applies to 'all claims.'"); *Bannett v. Hankin*, 331 F. Supp. 2d 354, 360-61 (E.D. Pa. 2004) (same); *Caparra v. Maggiano's Inc.*, No. 14-5722, 2015 WL 5144030, at *8 (E.D. Pa. Sept. 1, 2015) (same).

In this case, Plaintiff signed agreements containing arbitration clauses that encompassed "any controversy or any dispute" arising out of the 2006 Agreement, (2006 Agreement § 8), and "any dispute or controversy arising out of [Plaintiff's] employment or [the 2010] Agreement," (2010 Agreement § 4).  This matter concerns a dispute and controversy surrounding Plaintiff's employment with ATMOS.  Indeed, this language mirrors the language discussed in *Gilmer*, *Steigerwalt*, *Bannett*, and *Caparra* where agreements to arbitrate were enforced.  Based upon the nature of this dispute, and the very broad and clear language contained in the arbitration provisions of the 2006 and 2010 Agreements, this matter falls within the scope of the arbitration provisions that Plaintiff agreed to.

Plaintiff attempts to claim that his discrimination claims do not fall within the scope of the 2006 and 2010 Agreements.  Plaintiff points out that "there is no recital of the specific federal laws against employment discrimination" in the arbitration provisions found in the 2010 Agreement.  (Pl.'s Supp. Mem. 1.)  While true, this assertion is of no consequence.  A recital of specific laws is not a prerequisite for arbitrability of claims under those laws.  The ADEA does not preclude arbitration of claims if a valid arbitration agreement controls the employment relationship between the parties.  *Gilmer*, 500 U.S. at 35.  Parties are permitted to enter into

arbitration agreements which require arbitration of statutory claims such as Plaintiff's ADEA claim. *Underwood v. Chef Fransico/Heinz*, 200 F. Supp. 2d 475, 478 (E.D. Pa. 2002) ("There is no longer any doubt an employee may enter into an individual contract with his or her employer to arbitrate any and all future disputes including federal statutory claims so long as Congress has not precluded such arbitration."). Arbitration of employment discrimination claims filed pursuant to the ADEA are not precluded. This argument applies with equal force to claims under the PHRA. *See, e.g., Varallo v. Elkins Park Hosp.*, 63 F. App'x 601, 604 (3d Cir. 2003) (compelling arbitration of PHRA claim pursuant to arbitration agreement).

Since the arbitration provisions in the 2006 and 2010 Agreements are valid and enforceable, and since this matters falls within the scope of these provisions, Plaintiff will be ordered to arbitrate his claims against ATMOS.

### C.     Stay of this Action Pending Resolution of the Arbitration

Having determined that Plaintiff must submit to arbitration, we consider the request made by ATMOS to stay this action pending resolution of the arbitration. Section 3 of the FAA "allows litigants already in federal court to invoke agreements made enforceable by § 2. That provision requires the court, 'on application of one of the parties,' to stay the action if it involves an 'issue referable to arbitration under an agreement in writing.'" *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630 (2009) (citing 9 U.S.C. § 3). This case presents "an issue referable to arbitration under an agreement in writing." Under § 3, we are compelled to grant ATMOS' request. This matter will be placed in civil suspense pending the outcome of the arbitration.

Because this matter will be placed in civil suspense, we need not reach the question of whether Plaintiff has sufficiently stated claims for relief. "[T]he plain language of the [Federal Arbitration Act] affords a district court no discretion to dismiss a case where one of the parties

applies for a stay pending arbitration." *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004). Indeed, "the merits of an arbitrable claim is for the arbitrators to decide." *Painewebber Inc. v. Hofmann*, 984 F.2d 1372, 1381 (3d Cir. 1993). Accordingly, the question of whether or not Plaintiff has sufficiently raised meritorious claims may be addressed by the arbitrator.

IV.     **CONCLUSION**

For the foregoing reasons, Defendant ATMOS, Inc.'s Motion is granted in part. This matter is to be placed in civil suspense pending arbitration.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**